**Marcia GRAY By her guardian and husband, H. Glenn Gray**

v.

**Thomas D. ROMEO, in his capacity as Director of the Department of Mental Health, Retardation and Hospitals, and the State of Rhode Island.**

Civ. A. No. 87–0573B.

United States District Court,
D. Rhode Island.

March 8, 1989.

Linda S. MacDonald, East Greenwich, R.I., William P. Robinson III, Edwards & Angell, Providence, R.I., for plaintiff.

John L.P. Breguet, Chief Legal Officer, Dept. of Mental Health, Retardation and Hospitals, Cranston, R.I., for defendants.

## ORDER

FRANCIS J. BOYLE, Chief Judge.

Plaintiff initially sought a declaration under the provisions of 42 U.S.C. § 1983 that the Defendants' refusal to withdraw a life-sustaining feeding tube violated her federal constitutional rights. *Gray v. Romeo*, 697 F.Supp. 580, 583 (D.R.I.1988). The Court concluded that Defendants' actions violated her right to control fundamental medical decisions affecting her own body and granted judgment for the Plaintiff. *See id.* at 591. Plaintiff now seeks attorney's fees pursuant to 42 U.S.C. § 1988.

In a section 1988 application, the Court must first decide whether an award of attorney's fees is warranted under the circumstances. *Sargeant v. Sharp*, 579 F.2d 645, 648 (1st Cir.1978). Should the Court find that an award is justified, the next step is a determination of a reasonable fee. *Id.* Although the First Circuit has stated that the determination of a reasonable fee ought to be divorced from any consideration of a fee agreement between client and attorney, *id.*, the United States

Supreme Court recently noted such an agreement may be a factor the court may consider. *Blanchard v. Bergeron*, —— U.S. ——, ——, 109 S.Ct. 939, 944, 103 L.Ed.2d 67 (1989) ("The presence of a pre-existing fee agreement may aid in determining reasonableness.").[1] In this case, the Court's understanding is that Plaintiff's estate has agreed to pay attorney's fees of approximately $40,000 should Plaintiff's attorney not otherwise recover. Finally, after determining a reasonable fee or "lodestar" figure, the Court must decide whether the use of a multiplier is appropriate.

A litigant must be a "prevailing party" to be eligible for attorney's fees under section 1988. A plaintiff is a prevailing party when she succeeds "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978), *cited with approval in Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed. 2d 40 (1983). Discussing the concept of prevailing parties, the United States Supreme Court recently observed:

> Redress is sought *through* the court, but *from* the defendant.... If the defendant, under the pressure of the lawsuit, pays over a money claim before the judicial judgment is pronounced, the plaintiff has "prevailed" in his suit, because he has obtained the substance of what he sought. Likewise in a declaratory judgment action: if the defendant, under pressure of the lawsuit, alters his conduct (or threatened conduct) towards the plaintiff that was the basis for the suit, the plaintiff will have prevailed.

*Hewitt v. Helms*, 482 U.S. 755, 107 S.Ct. 2672, 2676, 96 L.Ed.2d 654 (1987) (emphasis in original). Under this standard, Plaintiff clearly is a prevailing party. The characterization of her victory as a "declaratory judgment" does not alter that conclusion. "Section 1988 makes no distinction between

---

1. The *Blanchard* Court held that such a fee arrangement does not impose an automatic ceil-ing, however. —— U.S. at ——, 109 S.Ct. at 942.

actions for damages and suits for equitable relief." *Blanchard,* —— U.S. at ——, 109 S.Ct. at 945. *See also Rhodes v. Stewart,* —— U.S. ——, 109 S.Ct. 202, 203, 102 L.Ed. 2d 1 (1988) ("A declaratory judgment, in this respect, is no different from any other judgment.") Plaintiff is therefore entitled to recover reasonable attorney's fees.[2]

■ Plaintiff seeks a total award of $89,-358.65. See Appendix A. The standard, however, allows a litigant to recover attorney's fees "for an effective and completely competitive representation but not one of supererogation." *Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 953–54 (1st Cir.1984). Plaintiff is only entitled to *reasonable* attorney's fees. Plaintiff is not entitled to charge to Defendant the cost of an extraordinary legal effort. A portion of the Plaintiff's attorney's 417.6 billable hours, while tangentially related to representation of Plaintiff, are not properly chargeable to Defendants. The closet has been swept clean of any possible charges. For example, the fee application claims compensation for telephone conversations with Boston television stations and other representatives of the media. Defendants should not be expected to compensate the Plaintiff for the cost of generating publicity.

Neither should the Defendants pay for discussions with various theological experts. After paring out these and other extraneous charges, including telephone conversations with lawyers who had handled similar issues and representatives of the Society for the Right to Die,[3] estimated to total 82 hours as best can be ascertained from the time charges submitted, the Court concludes that 335.6 hours represent a reasonable amount of time expended on the legal issues in this case.

■ Plaintiff requests compensation at $150 per hour. A reasonable hourly rate, given that Plaintiff's attorney was an associate at the time of the litigation, is $100. Accordingly, the attorney's fees for the merits is $33,560.

■ In addition, Plaintiff requests compensation for work done on behalf of the instant fees application. Specifically, $100 an hour is sought for 22 hours of work. The Court, in the absence of any contrary affidavits submitted by Defendant, finds the hours and rate reasonable. *Cf. Blum v. Stenson,* 465 U.S. 886, 892 n. 5, 104 S.Ct. 1541, 1545 n. 5, 79 L.Ed.2d 891 (1984). Moreover, the Court grants the request for the costs of paralegals' efforts. *See Palmigiano v. Garrahy,* 707 F.2d 636, 637 (1st Cir.1983). This brings the lodestar to a total of $35,972.50.[4]

Plaintiff then seeks an upward adjustment to the lodestar figure by a multiplier of 1.33. Plaintiff's "Memorandum in Support of Motion for Attorneys' Fees, Costs, and Expenses" emphasizes the contingent nature of the initial fee agreement between Plaintiff and her attorney. Although the

2. In their "Memorandum in Support of Objection to the Plaintiff's Motion for Attorneys [sic] Fees," Defendants suggest that the Court in a pre-trial conference on March 23, 1988 prevented the transfer of Plaintiff to a local institution willing to remove the life-sustaining medical treatment. Defendants are absolutely in error; the Court entered no order prohibiting a transfer of Plaintiff to an institution that would accede to her and her family's wishes. Indeed, Defendants declined to pursue an informal effort to arrange a transfer and did not at any time seek an order that would permit them to do so.

3. The Court notes that Plaintiff's attorney spent a substantial number of hours conversing with attorneys not associated with this case and with attorneys from the Society for the Right to Die.

The inference is that some time was "spent without regard to productivity." *Hart v. Bourque,* 798 F.2d 519, 523 (1st Cir.1986) (165 hours for telephone calls). Although the record is unclear as to the exact hours spent conferring with these lawyers, the Court has subtracted what it deems to be an appropriate amount. This is an educational expense which should be borne by Plaintiff.

4. Whether the paralegals' costs should be included in the lodestar figure, which can be increased by a multiplier, is unclear. *See, e.g., Blanchard,* —— U.S. at ——, 109 S.Ct. at 944 (reserving question whether legal assistants' fees should be included in the award). Because, however, the Court declines to adjust the fees upward, the issue is moot.

United States Supreme Court reserved judgment on whether the likelihood of success, or conversely, the risk of loss, in a particular case warrants enhancement of a lodestar, *Pennsylvania v. Delaware Valley Citizens' Council For Clean Air*, 478 U.S. 546, 106 S.Ct. 3088, 3100, 92 L.Ed.2d 439 (1986), the First Circuit has decided that risk of loss is an appropriate factor when a multiplier is in issue. *Wildman v. Lerner Stores Corp.*, 771 F.2d 605, 612–14 (1985).

■ The *Wildman* court sets out a number of considerations a trial court should use when determining whether the lodestar's enhancement is justified. In addition to the payment, if any, the attorney would have received if the suit was unsuccessful, out-of-pocket costs, and overhead expenses, the trial court should examine

> whether, after the successful verdict, ... [the attorney was] *completely dependent* upon the court for [her] fees[.]

*Id.* at 614 (emphasis added). Plaintiff's Memorandum states that "the decision in this case leaves counsel completely dependent upon the Court for fees." While possibly true earlier in the litigation, that statement is no longer accurate, especially in light of the agreement by Plaintiff's estate to pay approximately $40,000 in attorney's fees should the Court decline to grant the instant motion. Plaintiff's Memorandum also notes "the exceptional nature of the case." "Neither complexity nor novelty of the issues, ... [however], is an appropriate factor in determining whether to increase the basic fee award." *Blum*, 465 U.S. at 898–99, 104 S.Ct. at 1548–49. For the foregoing reasons, the Court therefore declines to adjust the lodestar with the use of a multiplier. *See Blanchard*, ⸺ U.S. at ⸺, 109 S.Ct. at 944 (lodestar figure is presumed to represent reasonable fee); *Delaware Valley Citizens' Council*, 106 S.Ct. at 3098 (same).

Finally, Plaintiff seeks costs and expenses that include filing fees, transcripts, service of process and witness fees, expert witness charges, medical record charges, postage, photocopying, long-distance telephone calls, and computer research charges. A court may award a prevailing party's attorney reasonable and necessary costs and expenses. *Palmigiano*, 707 F.2d at 637. The Court therefore grants the request for costs and expenses, with the exception of the long-distance telephone charges.[5] The allowable costs and expenses is $2,523.45, thus bringing the total award to $38,495.95. See Appendix B.

ORDERED, that Defendants pay Plaintiff $38,495.95 in attorney's fees.

SO ORDERED.

APPENDIX A

**SUMMARY OF REQUEST SUBMITTED BY PLAINTIFF'S COUNSEL**

Attorneys' Fees:

| | | |
|---|---|---:|
| Merits | 417.6 hrs. @ $150/hr. | $62,640.00 |
| Fees | 22 hrs. @ $100/hr. | 2,200.00 |
| Paralegal time | 8.5 hrs. @ $25/hr. | 212.50 |
| Lodestar fees | | $65,052.50 |
| Requested Multiplier (1.33) | | 21,467.33 |
| Total Fees Requested | | $86,519.83 |
| Unreimbursed Costs and Expenses | | 2,838.82 |
| Total Request | | $89,358.65 |

**5.** As noted earlier, the Court declined to award attorney's fees for time spent conversing with attorneys not associated with the case and attorneys from the Society for the Right to Die. *See supra* n. 3.

## APPENDIX B
### SUMMARY OF THE COURT'S ANALYSIS

Attorneys' Fees

| | | |
|---|---|---|
| Merits | 335.6 hrs. @ $100/hr. | $33,560.00 |
| Fees | 22 hrs. @ $100/hr. | 2,200.00 |
| Paralegal time | 8.5 hrs. @ $25/hr. | 212.50 |
| Approved Lodestar | | $35,972.50 |
| Approved Multiplier | | 0.00 |
| Total Fees | | 35,972.50 |
| Unreimbursed Costs and Expenses | | $ 2,523.45 |
| Total Allowed Fees and Costs | | $38,495.95 |